UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OPINION CORP., Et. Al.

    Plaintiffs,

v.                                                         Case No. 8:15-CV-00811-EAK-AEP

ROCA LABS, INC.,

    Defendant.

_____/

## ORDER

This matter comes before the Court pursuant to Defendant's, ROCA LABS, INC. ("Roca"), Motion to Dismiss, (Doc. # 28), filed April 17, 2015, Plaintiffs', OPINION CORPORATION ("Opinion") and CONSUMER OPINION CORPORATION ("Consumer"), Response in Opposition, (Doc. # 29), filed April 30, 2015, and Roca's Reply, (Doc. # 38), filed May 18, 2015. For the reasons set forth, Defendant's Motion is **GRANTED**.

## BACKGROUND

On August 12, 2014, Plaintiffs sued Roca in the United States District Court for the Southern District of New York in a declaratory judgment action requesting declaration that Opinion was not infringing on Roca's trademark and copyrights, and that Opinion was immune under Section 230 of the Communications Decency Act[1]. (Doc. # 38 at 1). On August 15, 2014, Roca filed an action against Opinion in the 12th Judicial Circuit, in Sarasota County, Florida

---

[1] Section 230 of the Community Decency Act ("DCA") immunizes internet service providers from liability for content originated by others. 47 U.S.C. § 230(c)(1). This immunity preempts state law that otherwise provides for liability. 47 U.S.C. § 230(e)(3); Dowbenko v. Google Inc., 991 F. Supp. 2d 1219, 1220 (S.D. Fla. 2013) aff'd, 582 F. App'x 801 (11th Cir. 2014); Doe v. Am. Online, Inc., 783 So.2d 1010, 1018 (Fla. 2001) (holding that Section 230 preempts Florida law).

seeking damages for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")[2], tortious interference with a business contract, tortious interference with a prospective economic relationship, defamation via pissedconsumer.com, defamation via Twitter, and declaratory relief. (Doc. # 38). The 12th Circuit Court case was removed to this Court on August 26, 2014, and docketed as Roca Labs, Inc. v. Consumer Opinion Corp., et. al, Case No. 8:14-cv-02096-VMC-EAJ ("case 02096"). (Doc. # 38). On September 11, 2014, Opinion filed its Answer and Affirmative Defenses to Roca's Complaint. (Doc. # 38). On October 29, 2014, Roca transmitted a DMCA takedown notice[3] to Opinion threatening to file a copyright infringement suit in response to posts on the pissedconsumer.com website, describing Roca as a highly litigious party. (Doc. # 1 at 2). On January 13, 2015, Roca emailed Opinion demanding an immediate retraction of the alleged defamatory statements.[4] (Doc. 7-1).

On January 14, 2015, Opinion brought the instant action in the United States District Court, Southern District of Florida, seeking damages for misrepresentation of copyright claims under the

---

[2] Roca cited the foregoing sections of FDUTPA: section 501.204(1)(it is unlawful for any party to engage in unfair or deceptive acts or practices in the conduct of any trade or commerce); section 501.211(1)("anyone aggrieved by a violation" of the FDUTPA may bring a claim under FDUTPA to enjoin a party that has violated, is violating, or is likely to violate FDUTPA); section 501.211(2)(any action brought by an aggrieved party, wherein such party has suffered a loss as a result of violation of FDUTPA, such party may recover actual damages, plus attorneys' fees and court costs).
[3] Section 512(c), dealing with the creation of extrajudicial "takedown" notices with the Internet Service Provider (ISP), requiring that notices be accompanied by "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3)(A)(v).
[4] Under Florida law, a demand for retraction of allegedly libelous material is a prerequisite to an action for defamation. Ortega Trujillo v. Banco Central Del Ecuador, 17 F. Supp. 2d 1334 (S.D. Fla. 1998). In the email, Roca accused Plaintiffs of making the following statement about Roca Labs: "Specifically, statistics shown on the website include that there have been 52 complaints, $110k in claimed losses, $2.1k average loss, and 0 resolved"; "Roca Labs, through its chief attorney, Paul Berger, believes it can silence you through fear and intimidation directed at Pissed Consumer"; and "Roca Labs first sued us.") (Doc. 7-1).

Digital Millennium Copyright Act ("DMCA"), and a declaratory judgment that Opinion or Consumer had not defamed Roca. (Doc. # 1 at 2). On January 30, 2015, the United States District Court in the Southern District of New York entered an order transferring the New York declaratory judgment action to this Court docketed as Opinion Corp. v. Roca Labs, Inc., Case No. 8:15-cv-00263-SCB-TBM. (Doc. # 38 at 2). On March 9, 2015, Opinion voluntarily dismissed the case transferred from the Southern District of New York. (Doc. # 38 at 2). On April 2, 2015, the United States District Court for the Southern District of Florida granted Roca's motion to transfer the instant case to the United States District Court, Middle District of Florida. Id. On March 20, 2015, Roca filed its First Amended Complaint in Case 02096, and on April 15, 2015, Opinion filed their Answer to the Amended Complaint.

In the instant case Plaintiffs' claims are as follows. Count I alleges that Roca knew or was "willfully blind to the material falsity of its representations with respect to copyright infringement" under the DMCA, 17 U.S.C. § 512, and "as a direct and proximate result of [Roca]'s actions, Plaintiffs have been injured in an amount to be determined at trial."[5] (Doc. 1). Count II alleges further misrepresentation by Roca under the DMCA where Roca sent a DMCA shutdown notice of Opinion's website because Opinion's use of the words "Roca Labs" was an infringement. Id. Plaintiffs also assert in Count II that Roca either knew or was willfully blind to the material falsity of its representations in the DMCA notice of the violation of their rights under Title 17.[6] Id. Count

---

[5] Plaintiffs conclude in their first six counts that as "a direct and proximate result of Defendant's actions, Plaintiffs have been injured in an amount to be determined at trial[]"; and that "[p]laintiffs have been forced to retain the services of an attorney to pursue this action, and they are entitled to recover their attorney's fees and any and all costs associated with pursuing this matter. In the alternative, Plaintiffs ask for attorney fees as damages due to the bad faith action of Defendant in these matters."

[6] Plaintiffs maintain that the DMCA shutdown notice was used improperly for the reason that Roca's violation of its rights stems from Plaintiffs' use of Roca Labs' name which is not protected by under copyright law, but does not cite his assertion. (Doc. 1)

III alleges that Roca "willful[ly] and wonton[ly]...used the DMCA process, including a false sworn statement, to accomplish a purpose for which the DMCA notice and takedown procedure was not designed."[7] Id.

In Count IV Plaintiffs seek a declaratory judgment to corroborate its assertions that use of the words "Roca Labs" in roca-labs.pissedconsumer.com and use of a "Roca Labs" thumbnail image is fair use, or in the alternative, that it does not constitute infringement of a copyright lawfully owned or administered by Defendant. Id. More so, Plaintiffs seek a declaration from this Court that "Consumer Opinion Corp. does not own, operate, or otherwise have control over pissedconsumer.com, and therefore, took no actions that could be deemed lawful or unlawful." Id. In Count V Plaintiffs seek a declaration that they have not defamed Roca with the complained-of statements Opinion made on its website about Defendant[8] and also seek "a judicial determination of their rights and duties." Id. In Count VI Plaintiffs set out that Consumer owns the trademark "Pissed Consumer" and licenses this trademark to Opinion for use in conjunction with Opinion Corp.'s website pissedconsumer.com. Id. Plaintiffs elaborate that "Consumer Opinion Corp. does not own, operate, or maintain control over the website pissedconsumer.com." Id. Moreover, Roca knew that Consumer does not engage in website operations and that Roca cannot prove by clear and convincing evidence that Consumer made any of the statements with actual malice, as Consumer made no statements of or concerning Roca. Id.[9] In Count VII Plaintiffs seek a

---

[7] Plaintiffs allege that the "false and perjurious DMCA notice" was used by the Defendant to: "suppress criticism," "not to address any copyright concerns," and "to extract an advantage in another proceeding. . ." (Doc. 1).

[8] "[Roca Labs]. . . is a public figure, [the statements Opinion made] were true, substantially true, or statements of opinion, none of the statements referenced in Defendant's Notice pursuant to Fla. Stat. §770.01 give rise to a cause of action of defamation." (Doc. 1)

[9] The Court notes that, as far as Count VI is concerned, Plaintiffs have not requested any sort of relief as they have in their previous counts.

declaration that Roca is the alter ego of Roca Labs Nutraceuticals ("RLN"), that the corporate veil protecting either of them as against the liabilities, claims or finances of the other should be pierced and that both are jointly and severally liable for Plaintiffs' claims. Id.

In the 02096 case, Roca accuses Plaintiffs—the Defendants in 02096 case—of numerous violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), tortious interference with contractual relationships, tortious interference with prospective economic relationships, defamation, and declaratory relief, all related to the ownership and operation of the website at issue in this litigation. These allegations were amended but filed March 20, 2015. Plaintiffs—again the Defendants in 02096 case—answered those allegations April 15, 2015. In their Answer, Plaintiffs denied substantially the allegations in the Amended Complaint and alleged eight affirmative defenses, including, inter alia, immunity under Communications Decency Act, truth, qualified privilege, contractual defenses, first-to-file rule, and failure to state a claim.

## DISCUSSION

Under Federal Rule of Civil Procedure 8(a)(2), a Plaintiff's complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim on which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a [Rule] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his [or her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (second alteration in original) (citation omitted) (internal quotation marks omitted).

On a Rule 12(b)(6) motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1261 (11th Cir. 2012). Courts follow a two-prong approach when considering a motion to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). If "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the claim meets the "plausibility requirement," but it requires "more than a sheer possibility" that the allegations are true. Id. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned [...] accusation." Id. (quoting Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265 (1986)).

In the present case, Roca does not argue the insufficiency of Plaintiffs' complaint, but rather the complaint should be dismissed because it is compulsory in nature.

**The Compulsory Nature of Plaintiffs' Counterclaim**

A pleading shall state as a counterclaim any claim which at that time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties [over] whom the court cannot acquire jurisdiction. Fed. R. Civ. P. 13(a). A compulsory counterclaim is a defendant's cause of action "arising out of the transaction or occurrence that formed the subject matter of the plaintiff's claim." Yost v. American Nat'l Bank, 570 So.2d 350, 352 (Fla. Dist. Ct. App. 1990) (citing City of Mascotte v. Florida Mun. Liab. Self

Insurers Program, 444 So.2d 965, 966 (Fla. Dist. Ct. App. 1983), rev. denied, 451 So.2d 847 (Fla. 1984)). Florida courts encourage a "broad, realistic interpretation" of the compulsory counterclaim rule allowing the foreclosure of possibly duplicative litigation. Montgomery Ward Dev. Corp. v. Juster, 932 F.2d 1378, 1381 (11th Cir. 1991). If the court determines as a matter of law that a counterclaim is compulsory in nature, a party's failure to raise the counterclaim in earlier litigation constitutes a waiver of the claim. Yost, 570 So. 2d at 352; see also Republic Health v. Lifemark Hosps. of Fla., 755 F.2d 1453, 1454 (11th Cir. 1985) (holding that the determination of whether a counterclaim is compulsory is made as a matter of law). The Eleventh Circuit and Florida District Courts, in determining whether counterclaims are compulsory, have adopted the following four-factor test:

> (1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
> (2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counter claim rule?
> (3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
> (4) Is there any logical relation between the claim and counterclaim?

Beepot v. J.P. Morgan Chase Nat'l Corporate Servs., 57 F. Supp. 3d 1358, 1370 (M.D. Fla. 2014); Montgomery Ward, 932 F.2d at 1381; Republic Health Corp., 755 F.2d at 1455. An affirmative answer to any of the foregoing questions would mean that the counterclaim is compulsory. Montgomery Ward, 932 F.2d at 1381.

### i. The Logical Relationship Between the Claims

The Eleventh Circuit employs the "logical relationship" test to determine whether a counterclaim arises out of the same transaction or occurrence as the cause of action that underlies a case. Richardson v. Trainer, 2003 WL 25762441, at *4 (S.D. Fla. 2003); Olufemi v. Your Care Clinics, LLC, 2006 WL 269982, at *2 (M.D. Fla. 2006). Under Florida law, the "'logical

relationship test' is the yardstick for measuring whether a claim is compulsory." Beepot, 57 F. Supp. 3d at 1370–71; Londono v. Turkey Creek, Inc., 609 So.2d 14, 20 (Fla. 1992). Florida applies the same "logical relationship" test as applied in the Eleventh Circuit such that:

> "[a] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant."

Montgomery Ward, 932 F.2d at 1381 (quoting Neil v. S. Fla. Auto Painters, Inc., 397 So.2d 1160, 1164 (Fla. 3d Dist. Ct. App.1981)); see also Londono, 609 So.2d at 20. "The aggregate operative facts that can act as a common basis for both claims have been broadly construed in Florida." Juster, 932 F.2d at 1381. Indeed, the rule is "designed to foreclose the possibility of duplicative litigation, so Florida courts encourage a 'broad, realistic interpretation' of the rule that allows the rule to accomplish its goal." Puff 'N Stuff of Winter Park, Inc. v. Fed. Trust Bank, F.S.B., 945 F. Supp. 1523, 1530 (M.D. Fla. 1996).

Roca has brought against Opinion and Consumer a cause of action under FDUTPA, claims of tortious interference with Roca's contractual relationships and prospective economic relationships, and two defamation claims, one premised on statements authored by third-party individuals, and the other for republication of those third-party reviews on Twitter. Plaintiffs, in this case, have brought an action of misrepresentation of copyright claims under the DMCA, abuse of process against Roca, seek declaratory relief that Opinion's use of the roca-labs.pissedconsumer.com subdomain does not infringe on Roca's copyright, and the statements made by Opinion describing Roca's litigation practice is not defamatory.

While the parties seek remedy from different laws, there are strong topical similarities between the parties' causes of action. The parties each raise the general issue of defamation on

pissedconsumer.com; they each speak to the attributes of what was allegedly stated on pissedconsumer.com; and whether roca-labs.pissedconsumer.com constitutes infringement of a copyright lawfully owned or administered by Roca. The issues of defamation and copyright infringement lying at the heart of Roca's Amended Complaint in case 02096 are largely the same as Plaintiffs' Complaint in the current case. Because the instant claim revolves around the website pissedconsumer.com and whether the content posted rise to the level of defamation, it "arises out of the same aggregate of operative facts" making it compulsory in nature. Beepot, 57 F. Supp. 3d at 1371 (M.D. Fla. 2014); Montgomery Ward, 932 F.2d at 1381 (citing Roberts v. Nat'l Sch. of Radio & Television Broad., 374 F. Supp. 1266, 1270 (N.D. Ga. 1974)). Employing the "broad, realistic interpretation," it is clear the issues raised in this case should have been raised in the 02096 case, especially after amendment. Montgomery Ward, 932 F.2d at 1381. Accordingly, it is

**ORDERED** that Plaintiffs' Complaint is **DISMISSED with PREJUDICE**. The Clerk of Court is directed to close this case and terminate any pending motions.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 10th day of August, 2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to all counsel of record